# IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| MARK BARNETT, ET AL. | * | |
| PLAINTIFFS | * | |
| | * | |
| V. | * | CASE NO. 4:14CV00383 SWW |
| | * | |
| BILL GILKEY, ET AL. | * | |
| DEFENDANT | * | |
| | * | |

## **OPINION and ORDER**

Mark and Jessica Barnett bring this action under 42 U.S.C. § 1983 on behalf of themselves and their minor son, D.B., claiming that D.B. was subject to excessive force during his detention at the Yell County Juvenile Detention Center ("JDC"). Plaintiffs name the following defendants: Yell County (the "County"); the City of Danville (the "City"); Bill Gilkey ("Gilkey"); Steve Pfeifer ("Pfeifer"); Kristi Padgett; Rick Padgett; Timothy Spears; and Michael Spears.

Before the Court are (1) a motion for summary judgment by Michael Spears (ECF Nos. 26, 27, 28) and Plaintiffs' response in opposition (ECF Nos. 33, 34); (2) a motion for summary judgment by the City, Padgett, and Steve Pfeifer (collectively, the "City Defendants")(ECF Nos. 36, 37, 38), Plaintiffs' response in opposition (ECF No. 52), and the City Defendants' reply (ECF No. 54); (3) a motion for summary judgment by the County, Gilkey, and Kristi Padgett (collectively, the "County Defendants")(ECF Nos. 43, 44, 45), Plaintiffs' response in opposition (ECF No. 53), and the County Defendants'

reply (ECF No. 55); and (4) Plaintiffs' motion to amend the complaint (ECF No. 40), the County Defendants' response in opposition (ECF No. 46), and Plaintiffs' reply (ECF No. 49). After careful consideration, and for reasons that follow, Michael Spears's motion for summary judgment is granted in part and denied in part, the City Defendants' motion for summary judgment is granted, the County Defendants' motion for summary judgment is granted, and Plaintiffs' motion to amend is denied. Remaining for trial are Plaintiffs' individual capacity claims against Timothy Spears and Plaintiffs' supplemental battery claim against Michael Spears.

**I. Background**

On March 22, 2014, thirteen-year-old D.B. was serving the ninth day of a ten-day detention at the JDC. That evening, D.B. was confined in lockdown,[1] and he became upset when he overheard other juvenile detainees, who were sitting outside his cell, making threatening and derogatory remarks about his sister. D.B. began yelling and pounding on his cell door, and Robin Barefield ("Barefield"), an assistant administrator at the JDC, went to D.B.'s cell and attempted to calm him down. Later, Barefield texted Defendant Timothy Spears, a Danville police officer, and requested assistance. In deposition, Barefield testified that she asked Spears to perform a "walk through," which she described as follows:

> They just come and would through the back. The juveniles can see them. Sometimes they stop and talk to the kids[,] and they just come and check on things. . . . Usually, if an officer comes in from outside and the kids see an

---
[1] In deposition, D.B. testified that two days before the incident at issue, he was put on lockdown because he fought with another detainee. See ECF No. 41-10, at 6 (D.B. Dep., 21).

>officer in uniform, they're more [respectful] to - - than just detention officers who wear plain clothes.[2]

Barefield further testified that police officers would assist in restraining juvenile detainees if necessary.

When Timothy Spears received Barefield's text, he was at the Yell County Sheriff's Office talking to his brother Michael Spears, who was working as a sheriff's deputy. Together, the brothers responded to Barefield's request for help, and soon after they arrived at the JDC, they accompanied Barefield to D.B.'s cell. An inaudible video of the events that followed shows that Michael Spears deployed or extended his baton and held it firmly in his right hand, while Barefield unlocked the door to D.B.'s cell. Michael Spears stood at the entrance of the door, looked in and said something, and D.B. immediately walked out of his cell. Michael Spears, with baton in hand, talked to D.B. for a brief moment before he abruptly grabbed him by the neck and turned him 180 degrees toward a wall.

Keeping a grip on D.B.'s neck holding his baton, Michael Spears pushed D.B. into the wall and held him there. Timothy Spears then approached D.B.'s left side, grabbed D.B.'s left elbow and held it, while quickly forcing D.B.'s left forearm up to his head. It appears from the video that Timothy Spears wrenched D.B.'s arm into an extremely unnatural position, and it is undisputed that the maneuver broke the juvenile's left humerus. Timothy Spears held D.B.'s left arm in the bent position for a moment, said something to D.B., and then released D.B.'s arm, which fell limp and dangled at his side.

---

[2] ECF No. 33-4, at 9 (Barefield Dep., 20).

Timothy Spears then handcuffed D.B. Michael Spears maintained his hold on D.B.'s neck and held him against the wall during the entire incident, until Timothy Spears secured the handcuffs. The video ends with the Spears brothers leading D.B. away in handcuffs, and D.B.'s left arm appears flaccid, as though dangling from his left shoulder.

In deposition, D.B. described the foregoing events as follows:

> I mean, something that's happening that fast, whenever you get slammed up against a wall like that, I didn't know what was happening. They told me to stand up and walk out of my cell. So I stood up and walked out of my cell, and that's whenever they slammed me up against the wall.
>
> And the next thing I know, I just heard a big pop and seen stars. So one of them was holding a baton, so I thought they hit me with the baton, but it turned out to be my arm.[3]

D.B. further testified that when Timothy Spears put him in handcuffs, his arm started hurting and he was nauseous.

Based on the foregoing events, Timothy and Michael Spears faced state charges for third-degree battery. Michael Spears pleaded no contest, and a jury found Timothy Spears guilty as charged. On June 27, 2014, Plaintiffs filed this lawsuit under § 1983, charging that D.B. endured excessive force in violation of his constitutional rights. Plaintiffs also bring supplemental state claims under the Arkansas Civil Rights Act ("ACRA") and state tort law.

## II. Michael Spears

Plaintiffs charge that Michael Spears used excessive force against D.B in violation of his constitutional rights, and they bring supplemental state law claims for battery and

---

[3] ECF No. 41-10, at 10 (D.B. Dep., 38-39).

4

intentional infliction of emotional distress. Michael Spears moves for summary judgment on all claims.[4]

***Excessive Force Claims under 42 U.S.C. § 1983 and ACRA***.[5] Section 1983 provides a cause of action for constitutional deprivations caused by persons acting under color of state law. However, the doctrine of qualified immunity shields government employees acting within the scope of their duties from suit under § 1983 so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Michael Spears asserts that he is entitled to qualified immunity, arguing that the amount of force that he personally used against D.B. was slight and did not rise to the level of a constitutional violation.

Determining whether a defendant is entitled to qualified immunity involves a two-step inquiry. The first question is whether, taken in the light most favorable to the plaintiff, the facts show that the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If the answer is no, the inquiry is over because the defendant is entitled to qualified immunity. If the answer is

---

[4] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[5] The Arkansas Civil Rights Act (ACRA) specifically provides that a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act, *see* Ark. Code Ann. § 16–123–105(c), and the Arkansas Court of Appeals has relied on federal precedent to analyze an excessive-force claim under the ACRA. *See Martin v. Hallum*, 2010 Ark. App. 193, 374 S.W.3d 152 (2010).

yes, the second question is whether the constitutional right at issue was clearly established. *Id*.

When a plaintiff claims that he was subjected to excessive force while in custody, the applicable constitutional standard varies according to whether the plaintiff was an arrestee, a pretrial detainee, or a convicted inmate. *See Andrews v. Neer*, 253 F.3d 1052, 1060-62 (8th Cir. 2001). Here, D.B. was confined to the JDC for a ten-day period, and his status was comparable to a pretrial detainee. Accordingly, the Court finds that his excessive force claims should be analyzed under an objective, Fourteenth Amendment standard. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, --- U.S. --- (2015). Plaintiffs must show that the force that Michael Spears purposely or knowingly used against D.B. was objectively unreasonable. *See id*.

Whether the application of force was unreasonable turns on the facts and circumstances of each particular case, and "the actions of each officer [must be assessed] 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017)(quoting *Kingsley*, 135 S. Ct. at 2473)(quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989)). Factors relevant to assessing the objective reasonableness of force include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*.

It is undisputed that Michael Spears grabbed D.B. by the neck and spun him around to face a wall. It is also undisputed that while Michael Spears held D.B. against the wall, Timothy Spears manipulated D.B.'s left arm in a manner that caused a serious bone fracture. However, D.B. testified in deposition that Michael Spears's actions, specifically, grabbing him by the neck and holding him against the wall, did not injure him.[6] While it does not appear from the silent video that D.B. was actively resisting orders or that he posed a threat to anyone, the record shows that the amount of force employed by Michael Spears was *de minimis* and did not rise to the level of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 1874 n.21 (1979)( quoting *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S. Ct. 401(1977)("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.").

At the time of the incident in this case, it was clearly established that a state actor may be liable under § 1983 if he fails to intervene to prevent the use of force by another official. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). "This duty of a police officer to intervene to prevent the excessive use of force—where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration—was also recognized in numerous appellate decisions as of 2006, without any serious dispute from other quarters." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009)(citations omitted). Here, however, Plaintiffs do not claim that Michael Spears

---

[6] ECF No. 41-10, at 32 (D.B. Dep., 38).

knew that Timothy Spears was using excessive force against D.B. and failed to intervene. After careful consideration, the Court finds no genuine issues for trail on the excessive force claim against Michael Spears, which entitles him to qualified immunity.

***Battery***. To succeed with a battery claim, Plaintiffs must show that Michael Spears acted with the intent to cause some harmful or offensive contact and that a harmful or offensive contact resulted. *Mann v. Pierce*, 2016 Ark. 418, 17, 505 S.W.3d 150, 159 (2016). Michael Spears argues that he is entitled to judgment in his favor on this claim because D.B. admitted in deposition that he did not directly inflict physical injury upon him. However, liability for battery under Arkansas law is premised upon "some harmful or offensive contact," and physical injury is not required. The Court finds that questions for trial as to Plaintiffs' battery claim against Michael Spears.

***Intentional Infliction of Emotional Distress***. Under Arkansas law, a claim for intentional infliction of emotional distress, also known as outrage, has four elements: (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of its conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. *See Crockett v. Essex*, 341 Ark., 558, 563-64 (2000).

Michael Spears argues that Plaintiffs are unable to show extreme and outrageous conduct. Plaintiffs respond, "Michael Spears should have realized that his actions in

8

deploying a baton and grabbing a 13-year-old by the neck and slamming him against a wall would have caused emotional distress."[7]

Arkansas courts take a very narrow view of claims for outrage and reserve liability for only the most atrocious conduct. Even considering the evidence in a light most favorable to Plaintiffs, Michael Spears's conduct was not so extreme as to go beyond all possible bounds of decency. Further, Plaintiffs offer no evidence that Michael Spears caused D.B. to suffer severe emotional distress. The Court finds no genuine issue for trial on Plaintiffs' outrage claim.

### III. City of Danville

Plaintiffs claim that D.B. was subject to unconstitutional, excessive force because the City failed to adequately train its police officers. To establish municipal liability under a failure-to-train theory, Plaintiffs must prove that the failure to train in a relevant respect demonstrated "deliberate indifference" to D.B.'s constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996). Deliberate indifference in this context is a stringent standard of fault, requiring proof the City had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *See id*. Notice may be implied when (1) the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of misconduct indicates that the current training is insufficient to protect citizens' constitutional rights. *See Id*.

---

[7] ECF No. 33, at 17-18.

The City submits undisputed evidence that before Timothy Spears began working as a fulltime officer, and before his encounter with D.B., he received training from the Arkansas Law Enforcement Academy regarding the reasonable use of force. Plaintiffs contend that Spears's training was inadequate because it did not include specific instruction about juveniles and the JDC's use of force policies.

Plaintiffs point out that at the time in question, JDC policy mandated that guards employ the least amount of force necessary to control a resident and that handcuffs could only be used when absolutely necessary. Plaintiffs further note that Danville police officers routinely provided assistance at the JDC, and contrary to JDC policy, the policy of the Danville Police Department required that officers handcuff juveniles before moving them from one location to another. Plaintiffs conclude that "every time one of the City of Danville's officers . . . used handcuffs to simply move a juvenile within the JDC, the officer was using excessive force"[8] and that "D.B.'s injury was a highly predictable consequence of Rick Padgett's failure to train his officers to follow the policies of the JDC regarding use of force."[9]

The Court finds that Plaintiffs have failed to present triable issues regarding municipal liability. The JDC's use-of-force policy does not set the constitutional standard for a reasonable use of force, *see Luckert v. Dodge Cty.*, 684 F.3d 808, 819 (8th Cir. 2012), and the Court finds no authority for the proposition that special constitutional standards exist for juvenile as opposed to adult detainees. Second, Padgett's knowledge

---

[8] ECF No. 52, at 15.
[9] ECF No. 52, at 16.

that officers regularly handcuffed JDC detainees before escorting them to various areas did not inform him that the department's procedures or training were inadequate and likely to result in a violation of constitutional rights. *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)("For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries.").

### IV. Rick Padgett and Steve Pfeifer

Plaintiffs sue Rick Padgett, the Chief of Police, and Steve Pfeifer, the Mayor of Danville, in their individual capacities, asserting that they bear liability under § 1983 for failure to train and supervise. Padgett and Pfeifer move for summary judgment, asserting qualified immunity.

Because there is no respondeat superior liability under § 1983 actions, defendants sued in their individual capacities may only liable for their personal actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978); *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). A supervisor can be liable for a subordinate's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" *Otey*, 121 F.3d at 1155 (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994)). Furthermore, a supervising officer will not be individually liable for an otherwise unlawful act if he is entitled to qualified immunity.

A supervisor's failure to train a subordinate may subject the superior to liability under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Otey*, 121 F.3d at 1156 (quotation

11

omitted). "The plaintiff must also prove that the alleged failure to train "actually caused" the constitutional deprivation. Thus, it follows that a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)(emphasis added)(citations omitted).

Plaintiffs do not claim that Padgett or Pfeifer directly subjected D.B. to excessive force. Instead they argue that both defendants "would have known that the failure to train Danville Police Officers to follow the policies and procedures of the JDC would result in the officers using excessive force on juveniles at the JDC." [10] According to Plaintiffs, "Padgett knew that his officers were using pepper spray on juveniles and handcuffing them to move them, [and] all that was required was verbal commands."[11] As for Pfeifer, Plaintiffs allege that as mayor, "he . . . allowed Padgett to decide whether officers should be sent over to the JDC [,] and left it to . . . Padgett to decide on general [police policy]."[12] Plaintiffs conclude that "because . . . Pfeifer supervised Padgett, who was the direct supervisor of Timothy Spears, and Pfeifer had knowledge of the various uses of excessive force by the Danville Police Department at the JDC, he at the bare minimum tacitly authorized the acts of the officers and should be liable."[13]

---

[10] ECF No. 52, at 18.
[11] *Id.*
[12] *Id.*
[13] ECF No. 52, at 19.

Even considering that Padgett knew that Danville police officers (1) provided assistance at the JDC, (2) handcuffed JDC detainees before escorting them from place to place, and (3) failed to follow the JDC's institutional policies regarding use of force, Plaintiffs have failed to present evidence that Padgett had notice that the existing police training program was likely to result in the excessive force claimed in this case. Even more tenuous is Plaintiffs' theory that Pfeifer is liable under § 1983 because he allowed Padgett, the Chief of Police, to handle police matters. In sum, the Court finds that Padgett and Pfeifer are entitled to qualified immunity.

## V. The County

Plaintiffs sue the County under § 1983, claiming that D.B. was subject to unconstitutional, excessive force because the County maintained an inadequate training program. Similar to their claim against the City, Plaintiffs argue that the County was aware that deputies provided assistance at the JDC and that they did not follow the JDC's policy regarding the use of force.

The County notes correctly that there can be no liability on its part absent an underlying constitutional violation by the County's former deputy, Michael Spears. *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) ("In light of our ruling that Detective Larson and Chief Satterlee did not violate Olinger's fourth amendment rights, Olinger's claims against the City . . . must also fail."); *Abbot v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim."); *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993)

13

(holding that because defendant officers possessed probable cause to obtain an arrest warrant, no basis for liability existed for the city or county). Because Plaintiffs present no facts showing that Michael Spears violated D.B.'s constitutional rights, claims against the County must fail. Furthermore, even assuming that Michael Spears had violated D.B.'s constitutional rights, Plaintiffs have failed to come forward with evidence that the County maintained an inadequate training program or was deliberately indifferent to D.B.'s constitutional rights. The County is entitled to summary judgment in its favor.

### VI. Bill Gilkey and Kristi Padgett

Plaintiffs bring § 1983 claims against Bill Gilkey, the Sheriff of Yell County, and Kristi Padgett, the Director of the JDC, both sued in their individual capacities. Gilkey and Padgett move for summary judgment, asserting qualified immunity. Similar to their claims against Padgett and Pfeifer, Plaintiffs claim that Gilkey and Kristi Padgett are liable under a failure-to-supervise, failure-to-train theory. For reasons previously explained, Plaintiffs have failed to come forward with evidence that Michael Spears caused D.B. to be subjected to a deprivation of constitutional rights. Given the absence of a constitutional violation by Spears, Gilkey and Kristi Padgett cannot be held individually liable a under § 1983. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). Furthermore, even assuming that Michael Spears violated D.B.'s constitutional rights, Plaintiffs have failed to present evidence that these individual defendants directly participated in subjecting D.B. to excessive force or that they acted with deliberate indifference in failing to train Spears. The Court finds that Gilkey and Kristi Padgett are entitled to qualified immunity and summary judgment in their favor.

## VII. Plaintiffs' Motion to Amend

Plaintiffs seek leave to file an amended complaint that adds two defendants and three new claims. For reason that follow, the Court finds that Plaintiff's amendments should be denied as futile because they could not withstand a motion to dismiss for failure to state a claim. *See Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999).

First, Plaintiffs seek to join JDC employees Barefield and Travis Carroll as defendants. They charge that Barefield's "failure to prohibit her subordinates from seeking help from [the police] in non-emergency situations was the cause of D.B.'s injury."[14] They continue, "By condoning the use of law enforcement personnel to assist . . . in non-emergency situations and/or failing to prevent her subordinates from doing the same, Robin Barefield failed to properly train her subordinates." [15] Plaintiffs also charge that Barefield and Carroll bear liability under § 1983 because they failed to supervise "outside officers" such as Timothy Spears and Michael Spears."[16] Plaintiffs do not allege that Barefield or Carroll personally participated in subjecting D.B. to excessive force; nor do they allege that Barefield or Carroll had supervisory authority over Timothy Spears, Michael Spears, or any alleged offending actor.

Next, Plaintiffs charge that Barefield, Carroll, Michael Spears, and Timothy Spears conspired to spray D.B. with capsaicin, but the plan was terminated because

---

[14] ECF No. 40-1 (proposed amended complaint), ¶ 109.
[15] *Id*. According to the undisputed facts, Barefield, not Barefield's subordinates called Timothy Spears for assistance.
[16] ECF No. 40-1, ¶¶ 109-110.

Timothy Spears and Michael Spears broke D.B.'s arm.[17] The Eighth Circuit has explained that the "doctrine of civil conspiracy extends liability for tort . . . other than the actual wrongdoer . . . but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself." *Simpson v. Weeks*, 570 F.2d 240, 242 (8th Cir.), *cert. denied*, 433 U.S. 911, 99 S. Ct. 3101 (1978). Even assuming that defendants agreed to pepper spray D.B., Plaintiffs' own allegations demonstrate that D.B. suffered no injury as a result of overt acts taken in in furtherance of that conspiracy.

Finally, Plaintiffs seek leave to join an additional excessive force claim arising from D.B.'s separate detention at the JDC on January 8, 2014. They allege that on that date, D.B. made a comment about a JDC employee, and unidentified persons, who are not named as defendants, placed him in a restraint device called "the WRAP." Plaintiffs describe "the WRAP" as a device similar to a straightjacket that forces a person to sit in an upright position while handcuffed. According to Plaintiffs, "D.B. was placed in the WRAP for two hours and suffered injuries as a result."[18]

The proposed pleading does not associate this claim with specific defendants, John Doe or otherwise, who placed D.B. in the WRAP. Plaintiffs only allege that JDC employees were required to obtain approval from Kristi Padgett or Barefield before using the WRAP, but they fail to provide facts sufficient to state a claim against Kristi Padgett or Barefield.

---

[17] ECF No. 40-1, ¶ 78. The elements of a § 1983 civil conspiracy claim against a particular defendant are as follows: (1) that the defendant conspired with others to deprive the plaintiff of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *See Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)(citations omitted).
[18] ECF No. 40-1, ¶ 71.

In sum, the Court finds that the proposed amendments fail to state facts that support a plausible claim. Accordingly, the motion to amend is denied. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)(quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir.2008)("Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'").

### VIII. Conclusion

IT IS THEREFORE ORDERED that Michael Spears's motion for summary judgment [ECF No. 26] is GRANTED IN PART IN DENIED IN PART. Plaintiffs' claims against Michael Spears are DISMISSED WITH PREJUIDCE with the exception of Plaintiffs' claim for battery.

IT IS FURTHER ORDERED that the City Defendants' motion for summary judgment [ECF No. 36] is GRANTED. All claims against the City of Danville, Rick Padgett, and Steve Pfeifer are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the County Defendants' motion for summary judgment [ECF NO. 43] is GRANTED. All claims against Yell County, Bill Gilkey, and Kristi Padgett are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' motion to amend [ECF NO. 40] is DENIED.

IT IS SO ORDERED THIS 30TH DAY OF JANUARY, 2018.

/s/ Susan Webber Wright
UNITED STATES DISTRICT JUDGE